STATE EX REL. SOLIE, Respondent, v. SCHMIDT, Appellant.†

*No. 629 (1974). Argued January 7, 1976.—*
*Decided June 2, 1976.*
(Also reported in 242 N. W. 2d 244.)

For the appellant the cause was argued by *James H. Petersen,* assistant attorney general, with whom on the brief were *Victor A. Miller,* attorney general, and *James H. McDermott,* assistant attorney general, and a reply brief by *Bronson C. La Follette,* attorney general, *James H. Petersen* and *James H. McDermott,* assistant attorneys general.

For the respondent there was a brief by *Dennis P. Coffey* and *Coffey, Murray & Coffey,* all of Milwaukee, and oral argument by *Dennis P. Coffey.*

DAY, J. The order appealed from reversed an order of the Department of Health & Social Services (DHSS) revoking the probation of James W. Solie.

† Motion for rehearing denied, without costs, on August 23, 1976.

The first issue on this appeal is whether the trial court erred in finding that the department's revocation of Mr. Solie's probation was arbitrary and capricious. We conclude that the court did err and that its order should be reversed. The second issue is whether Mr. Solie should receive credit for time served in jail awaiting the revocation order. We hold that he should.

On March 27, 1972, James W. Solie was found guilty of the crime of burglary (party to a crime) and sentenced to two years in prison. The sentence was stayed and the defendant was placed on two years probation. Mr. Solie signed a probation agreement with the department that, among other things, provided:

"I will secure advance approval from the Probation and Parole Agent, in writing if practicable, if at any time I wish to . . . [l]eave the state."

On October 17, 1973, after borrowing $300 from his sister, Mr. Solie rented a van for one week. At 3:00 a.m. on October 18, Mr. Solie, his wife, and two male companions left in the van. They were stopped by police outside of Lincoln, Nebraska later that day. Following this incident, Mr. Solie voluntarily returned to Milwaukee with his attorney and surrendered to the sheriff on October 20.

Mr. Solie was confined in the Milwaukee county jail from approximately October 20, 1973, until January 10, 1974, awaiting a decision on the revocation of his probation. A probation revocation hearing was held on December 14, 1973, and the hearing examiner subsequently recommended revocation. On January 10, 1973, the department ordered Mr. Solie's probation revoked on the ground that he left the state without the prior consent of his probation officer. In an interview with his probation officer he had said, "I suppose I knew I needed permission to leave the state," and that he did not discuss leaving the state with the probation officer because

he knew if he asked to leave, the probation officer would say no. The probation officer testified that Mr. Solie never had asked to leave, or discussed leaving, the state. He told his probation officer that when he left he intended to find a job and then return and "get things straightened out." Mr. Solie testified that his intentions had been to return to Wisconsin. He gave as the reason for leaving that he was getting "heat" from his in-laws about not having a job, and said he was simply "fed up."

The bureau stated as its reason for requesting revocation that:

"You admitted to leaving Wisconsin on October 18, 1973, without the advance permission of your supervising agent and your whereabouts and activities were unknown until your arrest at Lincoln, Nebraska on October 19, 1973."

Following the revocation hearing, Mr. Donald R. Schneider, the Hearing Examiner, made the following findings and recommendation:

"I find that the Bureau of Probation and Parole has proven its allegation by a preponderance of the evidence and testimony presented that James Solie left the State of Wisconsin on October 18, 1973 without the permission of his supervising agent and his activities and whereabouts were unknown until he was arrested the following day in Lincoln, Nebraska and returned to Wisconsin.

"I find that the Bureau's recommendation is neither arbitrary nor capricious and that the violation warrants revocation of probation.

"I find further that Mr. Solie has not made a satisfactory or sufficient mitigation or explanation of the allegation.

"I recommend that James W. Solie's probation be revoked for the reasons set forth above and also because at this time the Division of Corrections considers him to be unsuitable for probation supervision.

"Dated this 17th day of December 1973."

On January 10, 1974, the Department of Health & Social Services Division of Corrections revoked the probation of Mr. Solie in an order signed by Wilbur J. Schmidt, secretary of the department.

In June of 1974, Mr. Solie petitioned for a writ of certiorari; and after hearing, the trial court issued an order on July 3, 1974, reversing the revocation order of the department, releasing Mr. Solie from prison, and returning him to the status of a probationer. The basis for the order is set forth in a statement by the judge shown in the transcript of the proceedings:

". . . to put a man on probation for two years, and then, after he has performed 75 per cent of his probationary period, to say, 'Whoops, you stepped over the line by going into another state, and now we are going to put you in the Milwaukee County Jail for three and a half months and then we are going to have you serve your two-year sentence on top of it,' that's—well, they have almost doubled his sentence, is what they have done, really. I appreciate the position of the State, but if you would just apply—if you took all the law books and threw them out the courtroom and just applied the test of reasonableness, that can't pass; doesn't make it; it flunks. If it requires that I make a finding that the action of the Secretary has been capricious and arbitrary, I so find.

"I will grant the writ and order him placed back on probation."

The department has appealed from the order reversing the parole revocation.

In *State ex rel. Johnson v. Cady* (1971), 50 Wis. 2d 540, 550, 185 N. W. 2d 306, this court held that a petitioner's right of review of the revocation hearing is by certiorari directed to the court of conviction and that the scope of review should be addressed to whether the department's action was arbitrary and capricious and "represented its will and not its judgment." To reverse such revocation the petitioner has the burden of proof

by a preponderance of the evidence to establish that the board's action was arbitrary and capricious. *See also: State ex rel. Hanson v. H&SS Dept.* (1974), 64 Wis. 2d 367, 377, 219 N. W. 2d 267.

We regard it as basic to any system of probation that the probationer remain within the jurisdiction of the department. Here, that means remaining within the state of Wisconsin unless given specific permission to leave. The probationer here stated that the reason he did not ask permission is that he was sure that such permission would not be granted, and not without reason. The probation officer testified that during the 18 months he was on probation Mr. Solie had a very poor work record, and Mr. Solie admits to having quarreled with the probation officer over additional conditions of probation that the department sought to impose several weeks after probation commenced.

Both parties to this appeal admit that the standards concerning grounds for an alternative to probation revocation recommended by the American Bar Association and adopted by this court in *State ex rel. Plotkin v. H&SS Dept.* (1974), 63 Wis. 2d 535, 544, 217 N. W. 2d 641, are prospective only and do not apply to this case. The prospective nature of *Plotkin* was confirmed in *State ex rel. Hanson, supra,* at p. 376. In *Plotkin* at page 544 this court said:

" 'Revocation followed by imprisonment should not be the disposition, however, unless the court finds on the basis of the original offense and the intervening conduct of the offender that . . . it would unduly depreciate the seriousness of the violation if probation were not revoked.' "

██ We hold that, under the facts and circumstances of this case, leaving Wisconsin without permission and going to Lincoln, Nebraska, with plans and prospects as nebulous as those described in this record, was a serious violation of probation and warranted the finding by

the hearing examiner that the bureau's recommendation for revocation was neither arbitrary nor capricious. Sanger B. Powers, Administrator, addressed a letter to Mr. Solie under date of January 11, 1974, following the revocation order stating that his probation was revoked for the reason that he left for Nebraska without permission and "also because the Division of Corrections at this time considers you to be unsuitable for probation supervision." We therefore reverse the order of the trial court.

The second question before us on appeal is whether Mr. Solie should be given credit, against the two-year sentence that he must now serve, for the time that he was in the Milwaukee county jail. The state argues in its brief:

"To assist probationers and parolees in obtaining credit for prerevocation time, the department has developed a procedure to enable imprisonment pending revocation. The procedure requires that the potential revokee request housing in the prison. It places the potential revokee in the position to exercise an option as to whether or not credit against the sentence will accrue, an option relatively simple in its exercise. All the potential revokee need do is ask his agent to be sent to the prison."

The long delay between the time that Mr. Solie was returned to Milwaukee and the time of the revocation order was commented on by the trial court. The trial judge said:

"Well, big delay is occasioned by the fact that the State Department of Health and Social Services simply does not have enough hearing officers.

". . .

". . . [Delay is] not his [Mr. Solie's] fault. That's the State of Wisconsin's fault because they haven't provided the sufficient number of people to implement this program. And I am going to say it again for the record, we have been screaming about it because we sit here and

see the inequities that result by the fact that the State does not provide a sufficient number of hearing officers."

Whether Mr. Solie was incarcerated in a prison or in the county jail between the time of his return to Milwaukee on October 20, 1973, and the revocation order of January 10, 1974, is immaterial; in either case it is. incarceration. The statutory maximum period he could be incarcerated was the two years of his original sentence. This was triggered by the revocation which could not increase or decrease the sentence imposed by the court. Therefore it amounted to a "maximum sentence" for violation of probation.

We hold that the period of time Mr. Solie was held in jail awaiting his revocation hearing, 82 days, was unreasonable and that not deducting such time from the maximum sentence of two years which he incurred on the revocation would violate due process. *Mitchell v. State* (1975), 69 Wis. 2d 695, 701, 702, 230 N. W. 2d 884. In *Mitchell* the defendant was convicted by a jury of robbery and rape and was sent for a presentence sex-deviate examination to the state hospital. Two and one-half weeks after return to the jail from the hospital the court imposed the maximum sentence and the defendant claimed credit on such maximum sentence for the two and one-half weeks spent in jail. This court denied credit and said at page 701:

". . . a period of approximately two and a half weeks from the time the sentence could be imposed until it actually was is not so unreasonable as to offend either the due process clause or the equal protection clause of the United States Constitution so as to require either credit on or reduction of a sentence."

In *Kubart v. State* (1975), 70 Wis. 2d 94, 233 N. W. 2d 404, the defendant was sentenced on September 14, 1973, but was not transferred to Green Bay until September 18, 1973, and claimed this constituted an additional four-

▬▬▬▬▬▬▬▬▬▬

day imposition of sentence in violation of constitutional right. This court said (pages 105, 106) :

"In *Mitchell,* we found that a two and one-half week period between the defendant's return to jail from the hospital and sentencing was not unreasonable and did not violate either the constitutional right of due process or of equal protection.

". . .

"We conclude, following the rationale of *Mitchell,* that a four-day delay was not unreasonable and did not rise to constitutional proportions even though those four days cannot, under the statute, be credited to the diminution of sentence."

We hold the two-year sentence here must be reduced by 82 days, the sentence to be served in one year and 283 days. *Byrd v. State* (1974), 65 Wis. 2d 415, 424, 426, 222 N. W. 2d 696; *Mitchell v. State* (1975), 69 Wis. 2d 695, 699, 230 N. W. 2d 884.

*By the Court.*—Order reversed and cause remanded for further action not inconsistent with this opinion. The sentence of the defendant is modified to provide that the sentence shall be one year and 283 days.